# Wytheville.

## Vɪʀɢɪɴɪₐ Pₐssₑɴɢₑʀ & Pₒwₑʀ Co. v. Pₐₜₜₑʀsₒɴ.

### June 15, 1905.

1. Escʀₒws—*Delivery to Agent—Ignorance of Agency—Notice.*—A deed cannot be delivered in escrow to the known agent of the grantee. If so delivered, the delivery is absolute, and the condition is void. If a deed be delivered in escrow to one who is in fact the agent of the grantee, but that fact is unknown to the grantor, an instruction to the jury that if the agent disclosed the condition to his principal it is binding on him, but if he did not disclose it and the principal entered upon the land granted in pursuance of the deed such entry is not a trespass, is not prejudical to the grantee.
2. Iɴsₜʀᵤcₜɪₒɴs—*Jury Fully Instructed.*—It is not error to refuse an instruction when the jury has been already sufficiently and correctly instructed on the point covered by the rejected instruction.

Error to a judgment of the Circuit Court of the city of Richmond in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Miles M. Martin, A. S. Bloomberg* and *A. B. Guigon,* for the plaintiff in error.

*Bryan & Williams* and *A. W. Patterson,* for the defendant in error.

Cₐʀᴅwₑʟʟ, J., delivered the opinion of the court.

R. A. Patterson, defendant in error, plaintiff in the court below, brought this action in the Circuit Court of Henrico county against the plaintiff in error, the Virginia Passenger and Power Company, defendant below, as the successor in title to the rights, franchises, etc, of the Westhampton Park Railway Company, to recover damages for acts of trespass upon three separate portions of his lands, and at the trial of the cause in the Circuit Court of the city of Richmond, to which court it had been removed, recovered a verdict and judgment for fifteen hundred dollars, to which judgment a writ of error was awarded by this court.

Patterson was the owner of two certain tracts of land, two miles from the city of Richmond, at the western terminus of Grove road, the first lying partly on the north side of Grove road, running back, eastwardly, to Patterson avenue, and known as the Mitchell Place, and the second lying between the Westham, or Cary street road, and Patterson avenue, and known as the Wrenn Place, which two tracts are adjacent and constitute together a single tract of about one hundred acres.    Together with other land owners in that vicinity Patterson was one of the incorporators of the Westhampton Park Ry. Co., chartered for the purpose of building an electric railway from the city of Rich-mond to the Green's mill property, located at a point several miles in the county of Henrico.    Efforts on the part of these original incorporators to finance and construct through a certain agency the contemplated electric railway line having failed, Patterson was approached by one Robertson, on behalf of the Westhampton Park Ry. Co., with the request that he, Patterson, grant a right of way through his land, upon which to lay a track and operate electric cars between a point upon an established line near the city of Richmond and Westhampton Park, or the Green's mill property in Henrico county, and as an inducement to Patterson to accept this proposition various representations were made by Robertson as to the equipment and schedule of the proposed road, tending to encourage travel, the

development of property along its line, and its enhancement in value.    Relying upon these representations, Patterson executed a deed, conveying to the "Westhampton Railway Co." a strip of ground sixty feet in width, beginning at the Wrenn place, where the Grove road terminates, and running through the Wrenn place to the tract known as "Reveille," upon which Patterson resided.    No money consideration was paid for this deed, it having been made solely in consideration of the representations made by Robertson, and the promise and agreement entered into at the time that the company constructing the railway line upon said sixty-foot strip of land would also construct a substantial driveway on both sides of its tracks, satisfactory in all respects to Patterson, with such crossings and culverts as he might require, and without injury to or material inconvenience in the use of his property.

The declaration contains three counts, charging separate acts of trespass upon three distinct portions of Patterson's property, the first alone of which did the plaintiff in error, by virtue of the deed above mentioned or otherwise have even the semblance of right to invade, the acts done upon the remaining two being wholly unauthorized.

The route first contemplated was westward from the city of Richmond upon the extension of Grove avenue and along the Grove road to Patterson's property, thence along rights of way through various tracts to what is known as the "Three Chop Road," but it was afterwards determined to run out Floyd avenue, extended, as far as that was a public highway, then along rights of way forming an extension of Floyd avenue until Patterson's property was reached, then northwardly across the eastern end of his property (the Wrenn place) to the Grove road. Lying in the way of this second selected route was the refusal of the Richmond, Fredericksburg & Potomac R. Co. to allow the proposed electric road to cross its "Belt Line" track at grade, and it was thereupon concluded to go under that road, necessitating a cut of some 14 or 15 feet, at the bottom of which water

was encountered in such volume that it could not be overcome by use of pumps, and ditching had to be resorted to for a distance of sixteen hundred feet along the "Belt Line" track, which invaded Patterson's land, cutting it away in some portions, and in others throwing upon it embankments of earth, stones and rubbish taken from the ditch alongside, and causing other damage to his lands, without notice to or license from him.

The plea of not guilty was interposed by the plaintiff in error, and under it the trial was had upon the theory asserted as a defense—first, that plaintiff in error had the right under the deed from Patterson granting a right of way along the originally proposed route of the electric railway over certain of his lands, to construct the same as it had been constructed; and, second, that in so far as the route had been changed and other portions of Patterson's property had been touched or injured, he acquiesced, and was estopped from claiming damages for injuries resulting therefrom.

It will be observed, that upon the issues joined it was essentially a case for a jury under proper instructions from the court.

The evidence proved, or strongly tended to prove, that the deed in question had been delivered by Patterson to his son in January, 1901; that the deed contemplated the granting of a right of way from the terminus of Grove avenue directly westward through Patterson's land; that it speaks of a "map of the proposed Westhampton Park Railway Line, to be recorded simultaneously with this deed"; that the deed remained in the hands of its depositary, A. W. Patterson's, for six months; that in the meantime the route of the proposed railway had been changed from Grove road to Floyd avenue extended, so that the deed which had been executed and left with A. W. Patterson by his father no longer answered the purposes of the railway company, and therefore another deed, covering the new condition, was requested of Patterson; that a plat of the route as finally laid out was submitted to A. W. Patterson by Robertson for the purpose of drafting a new deed in conformity therewith,

and that Patterson, the father, refused to give such a deed; that Robertson then obtained the deed, here in question, from A. W. Patterson in connection with the new route, but without any intention or suspicion on the part of A. W. Patterson that Robertson was going to record the same; that with full knowledge of all these facts, and especially of the conditions upon which the deed was to become operative, and knowing further that A. W. Patterson had given him the deed without any intention or expectation that it would be recorded, Robertson took the same to the clerk's office and had it recorded, and that the plat filed for record with the deed is not the one referred to therein, and does not answer at all to the route therein described.

As to whether or not Patterson had such knowledge of the damage being done to those portions of his lands not embraced in the right of way intended to be conveyed by his deed, and so acquiesced in the alleged wrongful acts on the part of the plaintiff in error as that he should be estopped from setting up a claim for damages resulting therefrom, the evidence is all sufficient to sustain the finding of the jury, that he had no such knowledge. Therefore, as we view the case, it is only necessary to determine whether or not it was fairly submitted to the jury upon the instructions of the court.

While there are a number of questions raised and discussed at length in the petition for this writ of error, the most of which were not raised for consideration in the court below, there were but two bills of exceptions taken by plaintiff in error to the rulings of the court at the trial of the cause, the first of which relates to the instructions given and refused, and the other to the refusal of the court to set aside the verdict and grant a new trial on the ground that it is contrary to the law and the evidence, and because the damages allowed were excessive.

Both parties asked for instructions, but they were all refused, and in lieu thereof the following were given:

"The jury are instructed that plaintiff cannot recover any damages for the ditch on the land of Belt Line road, but if the

jury believe that the ditch encroaches to any extent on the lands of plaintiff he should be allowed compensation for the actual value of the land taken, and actual damages to his adjacent land consequent upon the ditch on such strip of his land as defendants occupied beyond the Belt Line R. R. track.

"The jury are instructed that as to so much of plaintiff's land as lies south of the Grove Avenue road extended the defendants must be regarded as trespassers, and under obligation to pay to plaintiff full compensation. The measure of that compensation must be the actual value of the plaintiff's land taken by defendant's road, and if the jury believe that the taking and use of this land diminished the value of plaintiff's adjoining land more than the railway benefitted it, they should take that damage into consideration and add a reasonable estimate therefor to the actual value of the land taken.

"But if the jury believe that the plaintiff knew and, without protest against the invasion of that portion of his land, acquiesced in the construction and completion of the road the jury may infer that he accepted the consummation of defendant's road as full compensation for any damage inflicted by defendants on that portion of his land.

"If the jury believe from the evidence that at the time when the plaintiff executed and delivered the deed of January 14, 1901, to his son, A. W. Patterson, to be done with as he thought best, he knew that the said A. W. Patterson was counsel or attorney for John C. Robertson for the purpose of acquiring rights of way to promote the building of defendant's railway, the jury are instructed that the delivery of the deed to A. W. Patterson was a consummate delivery to the grantees, and that in the transfer of that deed by A. W. Patterson to John C. Robertson as the then representative of the defendant company, the said A. W. Patterson had no right to qualify or abate the legal rights of defendant under that deed, and that in the user for the purpose

of their road by the defendant of so much of plaintiff's land as is embraced in the deed the defendants were not trespassers, and the plaintiff is not entitled to any damages for such taking or user.

"If the jury believe from the evidence that the plaintiff delivered the deed of January 14, 1901, to A. W. Patterson, to be held by him in escrow, and did not know at that time that the latter was attorney for John C. Robertson for the purpose of procuring rights of way for the construction of a railway, and if they further believe that the said A. W. Patterson delivered the said deed to the said Robertson without any statements of the conditions required by his father, then they are instructed that the defendant company, acting under said deed, was not a trespasser.

"But if the jury shall believe that Dr. Patterson did not know that A. W. Patterson was attorney or counsel as aforesaid and shall further believe that A. W. Patterson accompanied delivery of deed to Robertson with a statement of conditions required by his father, then they are instructed that the defendants can claim no right under the deed without compliance with such conditions."

After these instructions had been given, plaintiff in error asked for an additional instruction, numbered 4, which was also refused. It is only to the last two instructions given by the court and the refusal to give No. 4 that objection is made.

These instructions objected to relate to the evidence tending to show that the deed in question was not to be delivered to or used by the electric railway company, except upon compliance with the stipulations and conditions alleged in the declaration, and we are unable to see any ground for complaint on the part of plaintiff in error thereto, as they submit that phase of the case not only fairly to the jury but most favorably to plaintiff in error's view of the evidence. Instruction No. 4, refused, was but a repetition of a question already submitted to the jury by the instructions given, and there was no error in refusing it.

.Damages were claimed to the amount of 5,000, while the amount allowed by the jury is $1,500, and no good reason is presented for considering this amount excessive, and none whatever occurs to us. Not only did the jury hear the evidence introduced, but had the exceptional advantage of a view of the lands involved.

We are of opinion that the verdict is in accordance with the evidence; that the damages awarded are not excessive, and that there is no error in the rulings of the Circuit Court at the trial; therefore, its judgment must be affirmed.

*Affirmed.*